THE STATE, THE BOARD OF FINANCE OF JERSEY CITY ET
AL., PROSECUTORS, v. THE BOARD OF STREET AND
WATER COMMISSIONERS, THE MAYOR AND ALDERMEN
OF JERSEY CITY, THE UNITED GAS IMPROVEMENT
COMPANY, THE JERSEY CITY GAS LIGHT COMPANY
AND THE CONSUMERS' GAS COMPANY OF JERSEY CITY.

1.  The board of street and water commissioners, under the act of 1891
    (*Pamph. L.*, *p.* 249), have exclusive power to make contracts for light-
    ing streets.  The board of finance in *Jersey City has no power to limit*
    the amount of appropriations for such purpose.
2.  The contracts which may be so made cannot exceed a term of five
    years.

This writ brings up a resolution adopted by the board of
street and water commissioners on April 25th, 1892, and ap-
proved by the mayor April 26th, 1892, and a contract dated
April 28th, 1892, for the furnishing of gas in old Jersey City
and Lafayette.  This contract was signed by the mayor, but
was not concurred in by the board of finance, nor was any
appropriation made by that board to meet the expenditure
which would result from the contract.

Argued at November Term, 1892, before Justices DEPUE
and REED.

For the prosecutors, *Gilbert Collins.*

For the defendants, *William D. Edwards* and *Joseph D.*
*Bedle.*

The opinion of the court was delivered by

REED, J.    The first point upon which the board of finance
insists is, that the street and water board cannot enter into any
contract which will burden the city with a tax without the
concurrence, directly or indirectly, of the board of finance.

For the purpose of ascertaining the soundness of this position, it is essential that the course of legislation respecting the power conferred upon the various boards under the charter of Jersey City should be stated.

It appears that by the provisions of an act to reorganize the local government of Jersey City, passed in 1871 (*Pamph L.*, p. 1094, § 6), a board of public works was created. Among the subjects over which this board was given control, under section 39, was the lighting of streets and public places. In section 17 of this charter it was provided that the board of aldermen, the board of education, the board of police commissioners and the board of public works shall each annually, during the month of June, present in writing to the board of finance and taxation an estimate of its receipts and expenditures under general heads for the ensuing fiscal year.

In section 129 of this charter it is provided that the board of finance and taxation shall, after considering the estimates and recommendations of the several boards, annually, during the month of July, fix the amount to be raised by tax each year for the various purposes of the act, and the amount so found shall be the appropriation and limit of expenditure for the said purposes, except where by the act otherwise provided.

By a supplement to this charter (*Pamph. L.* 1873, p. 400, § 37), it is provided that no motion, resolution or order of the board of public works providing for the making of any improvement, or the doing of any work, or procuring of any materials, or the purchase of any property which may cost over $2,000, or for the employment of any person whose compensation may exceed $1,000 *per annum*, or for the payment of any sum of money exceeding $2,000, shall be of any force or effect unless the same be concurred in by a vote of the board of aldermen.

By section 15 of an amendatory act (*Pamph. L.* 1874, p. 509) the cognizance and control of the lighting of streets and public places was transferred from the board of public works to the board of police commissioners, and in section 9 of the act the power of concurrence, which, by section 39 of the act

of 1873, had been vested in the board of public works, was transferred to the board of finance and taxation. So it appears that the same act which provided that the board of finance and taxation should have the power of approving certain acts of the board of public works took away from that board all power and control over the lighting of streets.

The board of police commissioners were not subjected to the approving power of the board of aldermen and the board of finance in the respective sections named. When the control of the lighting of streets was devolved upon the control of police commissioners it ceased to be within the scope of the operation of section 37 of the act of 1873 or of section 9 of the act of 1874. No subsequent legislation has restored the concurrent power which existed under the act of 1873. Indeed, it was practically conceded upon the argument that this is the only rational construction to be put upon the legislation.

But it is insisted, upon another ground, that the board of finance and taxation still have a voice in respect to the amount which the board of street and water commissioners can expend. This insistence is rested upon the ground that section 17 and section 139 of the charter of 1871, which, as I have already remarked, confers upon the board of finance and taxation the power to fix the limit of expenditures, and which power, by the act of 1889 (*Pamph. L.*, p. 192, § 16), was transferred to the board of finance, still exists unrepealed. The soundness of this position must be tested by a construction of the act of 1891 (*Pamph. L.*, p. 242), which act organizes municipal boards of street and water commissioners in Newark and Jersey City, and defines the powers and duties of such boards. The question is, whether this board, to which the control of street lighting is given by the act of 1891, is entirely untrammeled in respect to the amount which it may expend for this purpose, or whether this board must make its report to the board of finance, and is bound to accommodate the amount of its expenditures to the amount of the appropriation which the board of finance may make.

On turning to section 11 of the act of 1891, we find the entire control over the matter of public lighting is conferred upon the board of street and water commissioners. That such control is exclusive is expressed in unmistakable language. The board is charged with exclusive power to make, with the consent of the mayor, contracts for lighting streets. The section contains the further mandatory language, " the Board or authority having the power and charged with the duty of making and adopting the annual tax levy or tax ordinance of such city shall appropriate the amount necessary each year to pay the cost of such lighting, or the fulfillment of any such contract."

It is admitted that the language of this section, read by itself, confers upon the board of street and water commissioners the exclusive power to incur debts, and, with the consent of the mayor, to make contracts for a term not exceeding five years.

But it is insisted that this section must be read in connection with section 22, and that the latter section preserves the power of the board of finance to fix the limit of appropriation to be made to the department of street and water commissioners.

The provisions of section 22 are, that wherever there shall now or hereafter exist any limitations upon the powers transferred to the board of street and water commissioners by requiring the concurrence of any separate board or municipal officer (excepting certain boards), the act shall not be construed as dispensing with such concurrence.

I think it clear that, so far as concerns Jersey City, the provisions of this section do not touch the power of the board of finance to fix the amount of appropriations.

The words " requiring the concurrence of any separate board " relates to the execution of such acts as required a direct approval.

They do not apply to the indirect control which the board of finance exercise by virtue of its power to limit appropriations. The word " concurrent " is employed in the same sense

as it possesses when used in section 37 of the act of 1873, and in section 39 of the act of 1873.

But the language of section 11 seems to be conclusive upon this point; for the construction urged by the board of finance would nullify the express provisions of that section. This result would conflict with the rule of statutory construction that every part of the statute must be given its due effect.

I conclude, therefore, that the power to make contracts for street lighting resides exclusively with the mayor and the board of street and water commissioners.

Another objection, however, is urged against the validity of the contract; namely, that its duration exceeded the period' for which the board was authorized to contract.

Upon referring to the contract, it appears that by its terms the gas companies are obliged to furnish gas for nine hundred lamps in a certain part of Jersey City for five years from December 1st, 1891, for a certain price per lamp *per annum,.* and the city agrees to pay the said price. The contract contains a further stipulation to the effect that the gas companies may be required to lay one mile of new mains in each year during the continuance of the contract, in consideration of which the board is to pay for a certain number of lamps along the line of the new mains, at the rate then in force, for a period of five years from the date upon which such lamps shall first be lighted. There are other conditions limiting the liability of the company in respect to the construction of the mains,. which are not material upon the present point.

It is perceived that the effect of this contract is to bind the city to pay for lamps for a period which may reach to ten years. For if the new lamps are first lighted near the end of the period of five years, the duty of the city to pay for such lamps, by the terms of the contract, will continue for five years longer. Now, by the express provisions of section 11 of the act of 1891 (*Pamph. L., p.* 262), the board of street and water commissioners have power to make contracts for lighting streets for a term not exceeding five years. This

contract, therefore, so far as it is in excess of the power so granted, is void.

Nor can the void part be regarded as a separable part of the contract, for no one can say that this important feature of the contract, which provided for the extension of new mains from year to year, was not an influential factor in causing the execution of the contract.

The contract is vacated.

The other cases involving the same questions will take the same course.